**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | CIVIL ACTION NO. 23-0808 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| COUNCIL FOR THE ADVANCEMENT OF SOCIAL SERVICES AND EDUCATION D/B/A CASSE COMMUNITY HEALTH INSTITUTE | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is the Equal Employment Opportunity Commission's ("EEOC") Motion for Partial Summary Judgment (Record Document 36), seeking judgment on liability as to certain Title VII claims asserted on behalf of Destiny Johnson ("Johnson"). The defendant, Council for the Advancement of Social Services & Education d/b/a CASSE Community Health Institute ("CASSE"), opposes the Motion. See Record Document 43. The EEOC replied. See Record Document 45. For the reasons stated below, the Motion is **GRANTED IN PART and DENIED IN PART.**

**FACTUAL BACKGROUND**

Johnson, who is black, was employed by CASSE as a dental assistant at its Shreveport clinic from July 2019 until June 2020. See Record Document 36-2 at 1. During Johnson's employment, Dr. Edward Gray Chumley ("Dr. Chumley") served as the clinic's dental director. See id. Dr. Chumley's wife, Mary Elizabeth Chumley ("Ms. Chumley"), served as CASSE's Chief Executive Officer during all relevant times. See id. at 4.

In early June 2020, during a period of widespread racial justice protests, Dr. Chumley asked Johnson whether she had attended a Black Lives Matter protest. See Record Documents 36-6 at 2, 36-7 at 1, 36-8 at 7, 36-10 at 1. Johnson was the only black

employee present at the time the question was asked. See Record Document 36-2 at 3. Johnson testified that she was upset and humiliated by the comment because she found it racially charged. See Record Document 36-6 at 2. Johnson complained about the comment to Victoria Poe ("Poe") expressing that she felt uncomfortable and believed the comment was inappropriate. See Record Document 36-2 at 3. Poe relayed the information to Karen Weber ("Weber"), who then relayed Johnson's complaint to Ms. Chumley. See id. at 3–4.

Ms. Chumley immediately sent a text message to Johnson placing her on unpaid administrative leave pending an investigation into the incident that occurred between Johnson and Dr. Chumley. See Record Document 36-9. Johnson was never asked to return to work. See Record Document 36-8 at 1. During the EEOC investigation, CASSE stated that Johnson's removal stemmed from her "introduction of race" into the workplace. See id. at 4. However, CASSE asserts that Johnson was terminated, at least in part, for performance related reasons. See id. at 1–2.

The parties dispute whether Dr. Chumley made additional racially offensive remarks, including comments referencing blackface and looting. See id. at 3–4; see also Record Document 36-6 at 1. No evidence has sufficiently established those disputed statements for purposes of summary judgment.

## LAW AND ANALYSIS

### I.  Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317,

323-24 (1986). In applying this standard, the court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart Louisiana, L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id. If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 323). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational trier of fact to find for the non-moving party ...." Id.

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Looney Ricks Kiss Architects, Inc. v. Bryan, 2014 WL 1092403, at *2 (W.D. La. 2014). Partial summary judgment is for narrowing and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir. 1993).

## II.     Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee because she has opposed an unlawful employment practice or participated in protected activity. See 42 U.S.C. § 2000e-3(a). In analyzing a Title VII retaliation claim at the summary judgment stage, the Court must first determine whether the EEOC's claim is supported by direct evidence or circumstantial evidence, because that determination dictates the analytical framework the Court must apply. See Cooper v. Dallas Police Ass'n, 278 Fed. Appx. 318, 320 (5th Cir. 2008).

Where a plaintiff relies solely on circumstantial evidence of retaliation, courts apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green. See 411 U.S. 792, 802 (1973). Under that framework, a plaintiff must establish a prima facie case for retaliation, showing three elements: "(1) the employee engaged in [an] activity protected by Title VII; (2) the employer took [an] adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." See Cooper, 278 Fed. Appx. at 320. Once the employee proves the prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. See McDonnell Douglas, 411 U.S. at 802. Then, the burden shifts back to the employee to prove that the reason offered by the employer is a pretext for retaliation. See id. at 804.

By contrast, where the record contains direct evidence of retaliatory motive, the burden-shifting framework does not apply. Direct evidence is evidence that, if believed, proves the fact of retaliatory intent without inference or presumption. See Brown v. E. Mississippi Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993). When direct evidence

4

exists, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C., 778 F.3d 473, 475 (5th Cir. 2015).

As explained below, there is direct evidence of retaliatory intent, so the Court will use the appropriate framework. First, the EEOC has shown that Johnson engaged in protected activity under Title VII. A protected activity includes an opposition to any unlawful employment practice under Title VII. See § 2000e-3(a). An unlawful employment practice includes discriminating against an individual based on race. See § 2000e-2(a)(1). Here, it is questionable whether Dr. Chumley asking Johnson if she had attended a Black Lives Matter protest, standing alone, is sufficient to form the basis of a discrimination claim. However, for the first element of a retaliation claim, "protected activity" only requires an opposition to an unlawful employment practice. A plaintiff is not required to show that an unlawful employment practice actually existed, but only that the plaintiff had a "reasonable belief" that such practices existed. De Anda v. St. Joseph Hosp., 671 F.2d 850, 853 n.2 (5th Cir. 1982). Thus, the question becomes whether Johnson opposed a practice that she reasonably believed to be unlawful.

The record shows that Johnson subjectively believed that Dr. Chumley had "singled [her] out" and was "targeting [her] because of [her] race." Record Document 36-6 at 2. Further, the context of Dr. Chumley's question, asked in front of a group of white coworkers, reinforces the possible reasonableness of Johnson's belief that the comment was racially charged and discriminatory. Johnson's belief that Dr. Chumley was unlawfully discriminating against her based on her race was not unreasonable.

5

The next question is whether Johnson opposed this conduct. The record reflects that Johnson complained about Dr. Chumley's conduct to Poe. See Record Document 36-8 at 13. Poe then relayed the information to Weber, who then told Ms. Chumley about Johnson's complaints. See id. at 12. An opposition under Title VII means resisting or contending against the discrimination. See Crawford v. Metro. Govt. of Nashville and Davidson Cnty., Tenn., 555 U.S. 271, 277–78 (2009). Johnson's reporting of Dr. Chumley's conduct meets the requirement of an opposition. Because Johnson opposed an activity that she believed to be unlawful, she was engaged in a protected activity, satisfying the first element for a retaliation claim. See Cooper, 278 Fed. Appx. at 320.

Next, the Court must determine whether CASSE took an adverse employment action against Johnson. See id. An adverse action is any act which may dissuade "a reasonable worker from making or supporting a charge of discrimination." Price v. Wheeler, 834 F. App'x 849, 858 (5th Cir. 2020). Here, Johnson was placed on unpaid administrative leave, which is clearly an adverse employment action. See Record Document 36-9. Thus, the second prong for a retaliation claim is met.

Lastly, the Court must ask whether there is a causal connection between the protected activity and the adverse employment action. See Cooper, 278 Fed. Appx. at 320. Here, there is direct evidence that Johnson was placed on unpaid leave because she complained about Dr. Chumley's conduct. Ms. Chumley texted Johnson and stated that she was being placed on unpaid leave until she could complete her assessment concerning the incident between Dr. Chumley and Johnson. See Record Document 36-9. Additionally, Ms. Chumley stated that Johnson was terminated for her "introduction of race" into the workplace. See Record Document 36-8 at 3–4. Considering CASSE has

admitted that Johnson was placed on unpaid leave for complaining about Dr. Chumley's comment, the third element of the retaliation claim is clearly met. Therefore, the EEOC has established a prima facie case for the retaliation claim.

Because the Court has found direct evidence of retaliation, CASSE must prove by a preponderance of the evidence that it would have placed Johnson on unpaid leave even if it had not taken her complaints about Dr. Chumley into account. See Etienne, 778 F.3d at 475. CASSE attempts to blame Johnson's termination on performance deficiencies. See Record Document 36-8 at 3–4. However, Ms. Chumley's text to Johnson directly stated that Johnson was being placed on unpaid leave until Ms. Chumley completes her assessment surrounding the incident between Johnson and Dr. Chumley. See Record Document 36-9. This is clear statement that Johnson was placed on unpaid leave pending an investigation into the possible race discrimination. See id. Because the evidence is clear that Johnson would not have been placed on leave if it weren't for her complaints about Dr. Chumley, CASSE has not met its burden. See Etienne, 778 F.3d at 475.

The Court notes that even if there were no direct evidence, and the McDonnell Douglas burden-shifting framework applied, the EEOC would still prevail. See 411 U.S. at 802–04. Although CASSE has presented an alternative, nondiscriminatory reason for Johnson's placement on unpaid leave (i.e., performance deficiencies), the EEOC has shown this is a pretext. See McDonnell Douglas, 411 U.S. at 802–04. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Thompson v. Houma Terrebonne Hous., 2019 WL 2524591, at *3 (E.D. La. 2019) (citing Thomas v. Johnson, 788 F.3d 177, 179 (5th Cir. 2015). Here, the EEOC has presented the text message from

7

Ms. Chumley to Johnson which clearly states that the reason for her being placed on unpaid leave is to investigate the incident. See Record Document 36-9. Therefore, the EEOC's Motion for Partial Summary Judgment (Record Document 36) is **GRANTED** on the issue of liability as to the retaliation claim.

## III.     Discrimination

To successfully establish a prima facie case for racial discrimination in violation of Title VII, a plaintiff must demonstrate the following: "(1) [she] is a member of a protected group; (2) [she] was qualified for the position at issue; (3) [she] was subject to an adverse employment action; and (4) [she] was treated less favorably than a similarly situated employee outside of [her] protected group under nearly identical circumstances." Thompson, 2019 WL 2524591, at *3 (citing Lee v. Kan. City S. Ry. Co., 574 F. 3d 253, 259 (5th Cir. 2009)). Once the plaintiff proves the prima facie case, the burden shifts to the employer to provide an "alternative non-discriminatory explanation for the adverse employment action." Lee, 574 F. 3d at 259. If the employer can provide such an explanation, then the burden shifts back to the employee to prove that the explanation is "merely a pretext for racial bias." Id. Here, it is undisputed that Johnson is black, which means she is a member of a protected class. Additionally, as stated above, Johnson faced the adverse employment action of being placed on unpaid leave.

To determine whether an employee was qualified for the position at issue, courts considers objective qualifications. See Berquist v. Washington Mut. Bank, 500 F.3d 344, 350 (5th Cir. 2007). Generally, an employee can show he is qualified by "showing that he continued to possess the necessary qualifications for his job at the time of the adverse action …." Id. Here, Johnson had sufficient qualifications to be hired for the job, and there

is no evidence she lost those qualifications during her employment. Although CASSE maintains that Johnson was fired, at least in part, because of performance deficiencies, this evidence does not prove a lack of qualifications at the prima facie stage. See id. at 351; see also Record Document 36-8 at 3–4. Therefore, the EEOC has established that Johnson was qualified.

Next, the Court must consider whether the EEOC has proven that Johnson was treated less favorably than a similarly situated employee outside of her protected group under nearly identical circumstances. See Thompson, 2019 WL 2524591, at *3. For this element, the plaintiff must offer a fellow employee as a comparator and "demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" Lee, 574 F. 3d at 260. Here, the only available information for the Court to consider is that Johnson claims she was replaced by two white dental assistants. See Record Document 36-3 at 17. The EEOC has not presented evidence proving that CASSE hired two white dental assistants as replacements. Further, the EEOC has presented no evidence of how these alleged new hires were similarly situated to Johnson. Thus, the Motion for Summary Judgment (Record Document 36) is **DENIED** as to the discrimination claim because a genuine issue of material fact remains regarding treatment of similarly situated employees.

### IV.     Hostile Work Environment

To prevail on a race-based hostile work environment claim under Title VII, a plaintiff must demonstrate:

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and]

9

>(5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Parker v. State of Louisiana Dept. of Educ. Spec. Sch. Dist., 323 Fed. Appx. 321, 325 (5th Cir. 2009). "To affect a term, condition, or privilege of employment, the harassing conduct 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" E.E.O.C. v. Boh Bros. Const. Co., L.L.C., 731 F.3d 444, 453 (5th Cir. 2013) (citing Aryain v. Wal–Mart Stores of Tex., L.P., 534 F.3d 473, 479 (5th Cir.2008)). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." Frank v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003). Courts use a "totality-of-the-circumstances test that focuses on 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating ... and whether it unreasonably interferes with an employee's work performance.'" Id. (citing Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 347 (5th Cir. 2007)).

Here, the only race-based conduct in the summary judgment record that indisputably took place is Dr. Chumley's question about whether Johnson had attended a Black Lives Matter protest. Although the EEOC alleges that Dr. Chumley made various other racial comments at the workplace, the Court cannot consider those comments at this stage because they are disputed. Thus, the question is whether this one comment about Johnson's attendance at the protests is sufficient to establish a hostile work environment.

The Court finds that this one comment, standing alone, is insufficient to establish a hostile work environment. Using the framework explained above, this comment does not show frequent discrimination, and it is not so severe or pervasive to create an abusive

work environment. Therefore, the Motion for Summary Judgment (Record Document 36) is **DENIED** as to the hostile work environment claim.

## CONCLUSION

Accordingly, the EEOC's Motion for Partial Summary Judgment (Record Document 36) is **GRANTED IN PART and DENIED IN PART**. The motion is **GRANTED** on the issue of liability as to the retaliation claim. The motion is **DENIED** as to the discrimination and hostile work environment claims.

An order consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 5th day of January, 2026.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE